The Court now calls Case 119518, Michael Richter v. Prairie Farms Dairy, Inc. Are you ready to proceed? Happily ready. Good morning. Good morning. My name is Donald Shoemaker, and I have the privilege of representing Prairie Farms Dairy, the appellant in this matter. I think it's necessary in order to understand the arguments that are being presented to the Court today that you have some brief understanding of the facts. On October 6, 2005, the case that I call Richter 1 was filed in Madison County. In that matter, the plaintiff filed for three counts, shareholder remedies, consumer fraud, and common law fraud. On 9-26-07, the trial court dismissed counts 2 and 3 would leave to amend within 30 days. Within that time period, within those 30 days, the plaintiff moved for additional time. They were granted a finite period of time to do so, but they never filed an amended complaint within the time period allowed by the trial court. On 9-7-12, approximately five years later, the plaintiff got in a box with regard to expert disclosures seven years into the case, and they took a voluntary dismissal of the sole remaining count, count 1, shareholder remedies. They waited approximately a year, and then on 9-1-13, they refiled what I call Richter 2. Now, they filed a claim for count 1, shareholder remedies, count 2, common law misrepresentation, count 3, common law fraud, and count 4, breach of fiduciary duty, a wholly new claim that had never been asserted before. They also added parties of Mr. Edward Mullins and the Board of Directors of Prairie Farms Dairy, although they never served Mr. Mullins or the Board of Prairie Farms Dairy. On December 27, 2013, Richter 2 was transferred to Macoupin County. On June 24, 2014, the Richter 2 court in Macoupin County granted Prairie Farms Dairy's motion to dismiss pursuant to 2-6-1-9-4, barred by a prior judgment, and 2-6-1-9-5, not commenced within the time allowed by law. Plaintiffs took an appeal, and the order of the trial court was reversed by the appellate court. Prairie Farms Dairy filed a petition for leave to appeal to this court, and the same was granted. The issues presented to this court are whether the plaintiff's cause of action was not barred by the prior judgment and whether the plaintiff's claims were not barred by the statute of limitations and or elections. The standard for review is no. Can I ask you a question about the record? Yes, ma'am. Since we have, as you call it, Richter 1 and Richter 2, and we have Richter 2 before us, and my general question is, what do we know about what happened in Richter 1? And I raise that because the appellate court's decision here seems to be, well, not seems, it says that the focus of the appellate court's decision is focused on a statement such as failure to obtain a definitive ruling does not merit the application of res judicata. So it appears that the appellate court is saying the lack of diligence, shall we say, on the part of the defendant in the original case is why res judicata should not be applied here. Do we have a record as to what took place during those five or six years after the court entered its motion to dismiss order? What was going on for all of those years on this case that looks pretty straightforward? I'll tell you what was going on. First of all, is this all on the record? There is a docket sheet in the record, the appellate court record, of what was going on, and there was interrogatories, requests to produce. We, the defendants, filed discovery against the plaintiff on the sole remaining count, shareholder remittance. We spent the next five years conducting discovery on his claim under shareholder remittance. We took depositions under his claim of shareholder remittance. We did not conduct any discovery under the previously involuntarily dismissed claims. Why did it take five years? Well, Your Honor, there were a number of factors going on in this case. Mr. Richter went out of business during the intervening time period. He was incapable or unavailable to provide appropriate documentation regarding his alleged damages. What happened was Prairie Farms terminated his participation in the cooperative because he shut down his dairy farm. One of the reasons he shut down his dairy farm was the Illinois Department of Public Health and the Illinois Department of Environment, the Illinois IEPA, got involved with regard to some runoff of his property. There was that going on at the same time the civil litigation was going on, and we were trying to conduct discovery as to whether he stopped producing milk because of X reason or Y reason and how long he was barred from producing milk. So his involvement with the state was going on. His civil litigation was going on. I'm not complaining about Mr. Richter at all, but his record-keeping was questionable, and it took time to go through all this stuff. I think we have 15 banker's boxes full of documents regarding the Illinois EPA matter and his finances post-termination at Prairie Farms. So this wasn't a matter where there wasn't a lot of stuff to go through on his shareholder remedies claims. There were, and action was taken investigating those claims. Nobody sat around doing anything with regard to the claim that existed, Count Warren, but nobody investigated what had been involuntarily dismissed, Counts 2 or 3, during the intervening five years between the involuntary dismissal and the plaintiff's voluntary dismissal of Richter Warren. Does that answer your question? If we look at this record as to what took place through those years, from your understanding of the record, did the plaintiff conform to the trial court's orders in terms of discovery? Well, the short answer is no. You can tell from the docket sheet that what occurred was the plaintiff had an expert disclosure deadline. The plaintiff filed a motion for extension of time. I think they received a very short period of time. They still were not able to comply with producing their actions. They applied to the court for another motion for extension of time, and this time the Madison County trial judge was out of patience, which is understandable after five years, well, seven years of litigation, and said, I'm not going to give you any more time to disclose actions. You're done. Let me ask you this. This is how the trial court handled it. How did, again, going back to the appellate court, looks at the inactivity of the defense. What did the defense do? What did you do to pursue this case that, after seven years, sure looks like it's drifting? What did you do to move this case forward? Well, Your Honor, as I said, I was conducting discovery through requests to produce, through interrogatories, and through the depositions of Mr. and Mrs. Richter. I also was filing motions to say, look, if they're not going to produce an expert, they should not be granted any additional time to do this. This case has been going on for so long. Let's get this over with. The sole reason they took the voluntary dismissal, involuntary, the sole reason they took the voluntary dismissal in 2013 was because I had opposed their motion for another, yet another extension time. There was also, Your Honor, a period of time in this case where the court, after the initial offer that represented Mr. Richter, withdrew, essentially stayed the case, allowing Mr. Richter time to find counsel. He essentially said, this is too complex of a matter, Mr. Shoemaker. I'm not going to allow you to proceed against somebody who has no idea what they're doing. I'm going to give him a reasonable period of time. That reasonable period of time turned out to be over a year to get counsel. This was not a matter where preforms stood around not doing anything. I also, and I wasn't going to jump to this, but there's this whole argument of whether preforms is at fault in this case. This is an Alice in Wonderland type argument. The court in this case enters an order that says, you plaintiff, you have X period of time to do something. And logic would dictate that if the plaintiff doesn't do something within that period of time, the plaintiff has consequences to that. Did you pursue any consequences? Well, Your Honor, I would, except there is no rule, procedure, or statute that allows for a motion to redismiss counts that have been dismissed. I've been practicing law for almost 25 years, a little over 25 years, and I have not once in my career ever filed a motion to redismiss a cause that's been dismissed. And I have discussed this with trial court judges. But you surely agree that there's a difference between a dismissal without prejudice and a dismissal with prejudice. But that's not what occurred here. What occurred here was the court said to the plaintiff, I'm involuntarily dismissing your cause of action, and you have X period of time to do something about it and file an amended complaint. And this court in Smith reached the appropriate decision in that case. And you said that if you don't act within that period of time, that decision becomes final. It's not appealable yet, but it's final. But Mr. Schumacher, is there a difference between involuntary dismissal, granting temporary leave to amend, and a dismissal without prejudice as following up on Chief Justice Garvin's question? I think there absolutely is. What's the difference? A dismissal without prejudice permanently invokes Rule 273 and permanently allows you to have a pleading that's without prejudice. I think where that language is absent, and what plaintiffs want to do is they want to say any time a judge issues an order that says you have X period of time to file something, they're going to add the words, and it's without prejudice. But that's not what the court trial court did here. Going their path, I think, weakens the trial court's ability to control cases. Because when a trial court says, I want you to do something within X period of time, and you don't do it within X period of time, there are going to be consequences. I'm not saying that I'm going to dismiss this for 30 days without prejudice. I'm saying I'm going to dismiss this and give you 30 days to do something. And when you fail to do something, there are going to be consequences. I'm going to kind of go back to where I left off. This case involves the doctrine of res judicata. Res judicata requires a final judgment of the merits, an identity of the cause of action, and identical parties. Both the plaintiff and the defendant, in this case, agree that the sole issue is whether there was a final judgment on the merits, insofar as the doctrine of res judicata. It's Perry Farms' position that under Supreme Court Rule 7273, that upon the expiration of the time allowed to amend by the Madison County Circuit Court, without the filing of amended pleading, that the 926.07 involuntary dismissal order became final. It does not become final and appealable until five years later, when they take their voluntary dismissal of the sole remaining count, count one. And that makes sense, because otherwise you can have exactly what occurs here. I can file the cause of action and have three of my counts dismissed and have one left. And the parties can concentrate on that cause of action and spend years and thousands of dollars, your honors, investigating that cause of action. We're not investigating all potential causes of action. I'm defending that count. But the plaintiff is wiling. The plaintiff says, okay, we've spent the last five years concentrating on count one. I'm now going to dismiss my cause of action without prejudice. I'm not even going to go back to the original trial court, who dismissed my counts five years ago, because they may say, well, you sat on them too long and we're going to go to trial. I'm not going to allow you to make bigger of those. But what I'm going to do, if I'm a wily plaintiff's attorney, is I'm going to voluntarily dismiss count one. Then, yet another year later, I'm going to refile all of them. And I'm going to claim that it's a totally new cause of action. And now, even though approximately eight years has passed since I originally filed the lawsuit and approximately ten years have passed since the facts about which I'm suing have passed and people have died and documents are gone and memories are faded, I'm now going to try and sue you on all the counts that I originally filed. That cannot be wrong. That simply cannot be correct. There should be some consequence to not following up and doing something within the time period allowed by the trial court. And the person who should be doing something is the plaintiff because that's who the order is directed to. If there was a rule that said, upon dismissal of a cause of action with leave to amend, upon expiration of the leave to amend period, the defendant may then move for a dispositive ruling on that count, then I could see the position taken by the plaintiff. But there is no such rule. Nor does it make any sense. Every motion to dismiss that ever grants plaintiff leave to amend would now be subject to two hearings instead of one. Because first you'd have a hearing and the plaintiff would automatically say, can I have leave to amend? And the judge typically routinely grants them a period of time to do so. And then the defense would have to wait for them to expire, and they'd have a second hearing on whether the motion, now that their time has expired, that is his final order. But a good plaintiff's attorney, and these gentlemen are very good plaintiffs, would then go in and say, Judge, give me more time. Give me another 120 days. Which is what they did again. And then once the 120 days goes in and I file another motion to make it final, they'd ask for more time. I mean, some of the cases cited in the briefs in this case, that occurred over and over and over again where the plaintiff asked for more time, more time, more time. That does not help our legal system move along. It doesn't help judges move their cases and handle their documents. Let me answer that question. There was a case management order entered in this case, right? Where was the judge in all of this? I'm not sure I understand. Does the judge enforce any deadlines? The judge finally. After five or six years. After five years said, Plaintiffs, I give you every break in the book. I'm not going to give you any more time. I mean, I'm not going to criticize the trial court's dealing of their docket here. It's up to the judge to decide how he's going to handle his docket. But I will say that the judge finally did the appropriate thing in Richter 1 when he told the plaintiffs, after five years of litigation, or actually seven years at that point in time, you still don't have your experts in law. So there was a case management order that was put in place. Yes. And did the judge enforce those deadlines? Not until the end. I mean, you know, there are routinely orders entered in Madison County allowing for discovery deadlines, allowing for expert disclosure deadlines, and every single one of those motions for a case management order was propagated by the defense. We're the ones who came to the court and said, we need a definitive date for plaintiff discovery to be cut off and for plaintiff to produce their expert. We need a definitive date for them to provide us with their expert reports. We need a definitive date for us to disclose their experts. And those orders were entered on our request. Okay? That's how we got the plaintiffs kind of boxed. They ran into a wall on producing their experts and disclosing their opinions. So my answer is yes, the court enforced the order when Bush came to show. I think that this case, in my opinion, boils down to two decisions. This court's decision in Smith. I argued about Smith in the lower court, in the court district, and I would all do deference to the appellate court there. Their recollection of Smith and what the actual language of the ruling says are inopposite. They're not the same thing. What this court said was when the trial court ran 60 days for the plaintiff to amend, the trial court left that window open for the plaintiff to do something for 60 days. I'm sorry. Thank you, counsel. May it please the court? Counsel?  Mr. Marks, what's the difference between a dismissal with leave to amend and a dismissal without prejudice? Nothing, Your Honor. That's based on the case law. We can look to the Deluna decision from this court and a number of others for that determination. So instead of a voluntary dismissal if the 60 days pass, you know, you have 60 days to amend, you come in in 75 days, 120 days, two years, because the litigation is still going on with respect to discovery, at that point in time say, well, Judge, here's my amended complaint. Would the judge have any recourse at that point? The trial court would have recourse at that time. It's our contention that the court has discretion at that point in time. Our residue to court argument is about there not being a final order, in this case, adjudicated on the merits. And the point that was being made before was merely that at that point in time, once that time period ran out, in here there was a 30-day window given, and then there was a 120-day window given. And that time passed without apparent action by the counsel. And so with that, during that protected time period that the plaintiff had, defense counsel is not at liberty to do anything. After that time period passes, then defense counsel can do something, or the plaintiff can do something. The plaintiff can do something like affirmatively tell the court that he or she wishes to stand on the complaint, and that would provide for a final order in the case. That wouldn't be an immediately appealable order, but that would be a final order. Here we don't have that. There is no affirmative election by the plaintiff to go forward in that matter, to stand on the complaint as dismissed. What do we do with our Smith case that indicated, again, a voluntary dismissal taken. There were 60 days to amend. The quote in Smith that says the plaintiff could have elected, as he did here, to voluntarily dismiss the count because the upshot of the court's February 27th order was that the granting of defendant's 2615 motion, and these are the operative words, would be considered to be with prejudice only after the expiration of the 60-day period. Wouldn't that indicate that once that 60 days runs, that the leave to amend within 60 days, if no action is taken, that at that time it becomes with prejudice? There would be an indication at that point in time, but that is a possibility. If we look to this opinion as well, towards the end, we also see that the court indicated that there could be additional time given by the trial court. It is in the trial court's discretion. It is not automatic. If we look closely. Well, let's draw that out then. Okay, so another 60 days given. In fact, there were extensions in this case. At some point in time, and you've already indicated, it would be discretionary if you come in after the date. So say there's two extensions and now it's been 180 days and still no amendment, and even no motion for a continuance. Wouldn't Smith indicate that that would be with prejudice at that point? At that point in time, I think the answer is no, Your Honor. At that point in time, what the defense could then do is move for a final order because what we have before that is a non-final order. To make it definitive, to absolutely and finally fix the rights of the parties, the defense can make them move for dismissal, move for default because the plaintiff hasn't done anything, or file some other. So Smith would have to be overruled? I'm sorry, Your Honor? Smith would have to be overruled? No, not at all, Your Honor. I think Smith needs to be followed and is being followed. We said to it as well. If the plaintiff disregards the court's order, then the burden is on the defendant to bring that to the attention of the court that the plaintiff is disregarding the court's order. In order to invoke the harshness of the doctrine of res judicata, that is the answer. For equity to act in that circumstance, to bar this claim at this point in time, yes. Is there any enforcement mechanism when the plaintiff disregards a court order? The defendant can act. I'm sorry, what was your response? The defendant can act and did not occur. So the defendant would have had to come in and say, okay, the 60 days has run, Judge. We want an order indicating now that it's with prejudice. Yes, sir. That it's final. That's correct, and that did not occur. And without them acting, it would be without prejudice until they act. Correct. Because what we have here is a leave to amend or a leave to replead such that it would be without prejudice by its nature. Again, just with Smith then, when it says considered to be with prejudice, if the order was that the grand defendant's 2-6-15 motion would be considered to be with prejudice only after the expiration of the 60-day period. So there indicate, I guess, partially your answer is that it's without prejudice if you have 60 days to amend. At that point, it would seem, Smith is saying, when that 60 days run, forget if there's a continuance for another 60, when that 60 days runs, it's considered with prejudice. It doesn't say that the defendant has to come in and say, hey, by the way, it's now with prejudice. Your Honor, if we look to the entirety of the Smith opinion, I don't think it's quite that strict in the interpretation. I think that the Smith court indicated that even more time could be given up to the discretion of the trial court. And the trial court, and there's nothing wrong with the discretion of the trial court in that circumstance. Would you be able, would the plaintiff be able to file an amended complaint after the time period had expired without seeking leave? I would suspect that at that point in time, just like any other amendment to a complaint, leave would be sought. After the time period had already expired. And that would be within the trial court's discretionary grant. In Illinois, we have liberal amendment pleading, and, of course, the trial court has the ability to manage its own time. I took it from Mr. Shoemaker's argument that all of the discovery proceeded as if there were only one count left. Does that play into our decision as to whether it appears you stood on the complaint without saying it? That is the intention of counsel. I would point out that, you know, there were many deadlines that were extended. And we had a change of counsel where it was only about nine months that the current counsel was in before the case, Richter 1, was voluntarily dismissed. So, as a second part to your question, Justice Carmer, what we have here is a single event in 2005 of the attempted ouster of the Richters as members of Curry Farms. And an undervaluation of their shares for $15. That is one single occurrence. Single occurrence whereby multiple counts were pled. Multiple counts all related to the same thing, whether that be shareholder remedy or some type of fraud theory. The discovery would have been on essentially the same topics. The original complaint, the two counts that were dismissed, were pled as consumer fraud and common law fraud. Yes, Your Honor. And the theory was that the language in the agreement between the parties, the defense, the Curry Farms group, their interpretation of that language in the contract was withheld fraudulently from the Richters, their interpretation of the contract. There's a motion to dismiss on two counts, two theories. One that this is really a contract action and not a fraud action. The other one is lack of specificity as to any facts. When you refiled seven years later, were there any new facts that were pled? There are a few facts pled. It's not the best complaint, but there were new facts pled. There were? I think there were. Not many, that's for sure, but some. It kind of seems when you read the two, they seem almost exactly the same. They're similar. Okay. So is it your position that the plaintiff would have to say, make some kind of an affirmative statement for the record, that we intend to stand on our complaint as to counts two and three? That would convert a non-final order into a final order. Alternatively, the defense can do the same thing for some type of motion, default, dismissal, or the like. To turn that non-final order into a final order. And that is what res judicata requires. A final order adjudicated on the merits, which we just don't have here. I'd like to make just a few brief points, and then address some of the questions that were by the court that went to Mr. Shoemaker. In Richter 1, there are no counts dismissed with prejudice, thereby definitively closing off some portion of the case for res judicata to act. We also have an order dismissing fraud counts, those based on the 615 motion, for failure to state fraud with specificity. Not for some substantive reason. It wasn't that there's a second theory in the motion to dismiss, and that this is not fraud. This is a contract dispute. So there is a substantive argument. And we can't really, I'm not sure we can tell from the court's order, on which one of those two rounds these counts were dismissed. Would you agree? The, since I was not there, and the gist of the motion, we can look to their motion, the gist of the motion was for lack of completing fraud with specificity. And that should be up record. It's attached to the appellant's complaint, isn't it? Brief? It is. And I would add, you had a question before from Mr. Shoemaker, Justice Tyson, that the docket sheets are up record. You can take a look, if you're honest, to see what was going on in Richter 1 over that course of time. We also have the operative orders, and those operative orders are included in Prairie Farms Appendix. I think that's F and H. F would be the order of dismissal that we've been talking about in Richter 1, and then the subsequent order in Richter 1 dismissing the case at H, if I recall correctly. So you can just look at those orders for purposes of your finality determination. That second order indicated the case was dismissed without prejudice. So there was some thought from the trial court that this case would return to the trial court. It did, upon a refiling within the one-year period under the savings statute. Mr. Marsh, is there – I'm going to give you a chance to give me a reason here as to why this would be so. Is there anything curious about a proposition in the law that would allow a plaintiff who – well, a defendant gets a case dismissed, as in this case, allow the plaintiff recourse to that dismissal, right, leave to amend, the plaintiff not taking advantage of what's been provided by the trial court, and then after that, a proposition in the law that would mandate the defendant to come in and say, this time we really mean it. We want it dismissed with prejudice. Judge, you gave him 60 days, you gave him another 60 days, you gave him another 60 days. It should be – we need an order dismissed with prejudice. Is there anything curious about putting the onus on the defendant when the plaintiff has been given a chance after one dismissal? Not when it comes to invoking the harshness of the doctrine of res judicata to cut off a plaintiff's rights to have the case heard. Is the court cutting off the plaintiff's rights or is the plaintiff cutting off the plaintiff's rights by not amending? Your Honor, in order to invoke that doctrine, a final order is needed and we just don't have one. Your Honor, one of the arguments that Gray Farms makes is that this director seeks to blend the analyses of finality, adjudication on the merits, and appealability. We don't do any such thing. We're just trying to follow the law on all of those subjects. We assert that there is no final order here and merely that. We're not seeking to change the law on those subjects. Those are all slightly different analyses. We seek to follow the law and we come up with a slightly different – excuse me, a lot different result than the other side does. And that is, looking at this order with leave to reappear, leave to amend, that is a non-final order by its nature. It is inferential. It is without prejudice. And until an order dismissing those counts with prejudice occurs, the doctrine of res judicata cannot be invoked. I'd like to talk briefly about the second issue, and that is statute of limitations. Your Honors, we rely merely in the refiling of the case in Rector 2 on the saving statute, 13-217, and on the Apollo v. Elbert case, which indicated that even those causes of action that were not brought in the prior case are subject to be applied in the second case, so long as they are closely related. That's not the operative language. It comes from this Court's opinion in Port v. Ketterman Memorial Hospital. And so long as we have a relation back that is substantially similar, then additional related theories can be depleted. And here that's just what we had. There was an additional theory added for breach of condition, very similar to statutory remedies for shareholders as well as for shareholders. I wanted to address some of Justice Tice's questions regarding the docket. In looking at the docket, there were a number of headlines that were extended over that five-year period. And during that time period, there was a bunch of discovery that was going on by both sides. And there was also right after the lapse of time for the amendment of the motions to derail the case, so to speak, to dismiss it for purposes of lack of personal jurisdiction, to change the venue, perform non-convenience. There was a series of motions, as well as both parties doing a lot of discovery for a long period of time. After new counsel got into the case and merely got jammed up for purposes of catching up with all this discovery, was the case voluntarily dismissed without prejudice by new counsel. There was nothing untoward towards it. It happens all the time for scheduling purposes. And then there was a time to refile it. With that, Counsel 1 in the first complaint in Richter 1 and Counsel 1 in Richter 2 are identical. There should be no question, for limitations purposes, that Counsel 1 and Counsel 1 for shareholder remedies are not subject to limitations bar. In my remaining time, I'll talk briefly about just a few of this Court's cases. We rely primarily on the Hernandez case from this Court just from four years ago for purposes of res judicata analysis. And in that case, this Court determined that there must be an order that finally and absolutely affixes the rights of the parties. We don't have that here. We also rely on the Richardson case from this Court. It's for the general proposition, and for the time allowed for amendment of the complaint, after dismissal expires without amendment, the trial court retains jurisdiction, thus preventing operation of the dismissal order as a final judgment. The Jackson case from the Second District, that's where a plaintiff has been granted leave to amend, has not yet filed an amendment complaint. He retains the ability to voluntarily dismiss that suit without reaching a final judgment on the merits of those claims for purposes of res judicata. Rule 273 does not operate as preforms as asserted. Rule 273 very clearly says that if the order otherwise indicates the non-finality of the nature of the order, and I'm speaking a little bit broadly here, where we have leave to file an amended complaint language present, then that should be enough. That Rule 273 does not operate to conclude that there was a final order adjudicating the case on the merits. The Hernandez case speaks to the operation of Rule 273 as well and confirms that conclusion. So with that, if there are no other questions, we would ask that the appellate court's opinion be heard. Thank you, counsel. Thank you. Mr. Shoemaker? The court asked if there is a difference between a dismissal without prejudice and a dismissal with leave to live. And the answer is there has to be, because the trial court used different language for a reason. There are appellate court holdings that say you have to look at what the trial court writes and interpret what they write, not add language, which is what the plaintiffs want to do. They want that order to say plaintiff is given X period of time to amend the complaint, current pleading dismissed without prejudice. But that's not what the order says. They could have asked for that, but they didn't. What they did was they asked for additional time to file an amended complaint. They took the affirmative step of saying, judge, if you're going to dismiss my fraud counts, I want additional time in order to review the facts of the case and see if I can plead sufficient facts to make that cause of action. They took the action of asking for that additional time. And then they did not take advantage of that additional time, which they were given by the court. And then they're saying it's the defendant's fault. It's not. This is a burden shifting that, quite frankly, should never be allowed. If we treat a dismissal with prejudice the same as a dismissal with leave to amend, then there is never, ever a reason for a court to enter an order that says leave to amend with an X allowed. Justice asked earlier, if that time period lapses, if I give you 30 days to file an amended complaint and you come in on the 45th day with an amended complaint, do you have to seek leave of the court to do so? And I can tell you, you absolutely do. I think you absolutely do. Once your time limit expires for the filing of that amended complaint as authorized by the court in a prior order, you then have to seek leave of the court, and the court has the opportunity to review that. And that's why I gave that example earlier about how the plaintiff could cause mischief in the court by not going back to the trial court and asking for leave to reinstate those claims four or five years later, but instead could wait, take an involuntary dismissal, and then refile the law. We have to read the order itself and give the orders meaning. Otherwise, I think that, and I think many of you have been trial justices, are crippling the trial courts in the handling of the cases. One of the questions was whether the plaintiff could advise the court that they were standing on a complaint. Why would a plaintiff ever do that if they can do what they're going to be allowed to do or what they're asked to do? There is no reason for the plaintiffs in this case to ever go to the court in Madison County and say, judge, we're going to stand on these counts. Because what they're going to do is they're not going to do anything with them for the next five years and then refile them later on. To the detriment of justice all the way around, I think there is a huge difference between discovery and litigation involving a shareholder remedies lawsuit and a fraud case, a breach of fiduciary duty case. They may involve the contract between the parties, but they also involve some conversations between the parties. Not investigated because it went away was Mr. Richter's claim that he had no idea what was going on here. What wasn't subject to discovery because it wasn't relevant at the time Mr. Richter was deposed was the fact that he was sitting on the board for many, many years when these decisions were made. He knew darn well what the company's position was on when you stop producing milk. But that wasn't investigated. Those meetings weren't investigated. The people who attended those meetings weren't deposed because the shareholder remedies count didn't require it. And in the intervening eight years people docked Memories Faith. But now they're claiming that they could do that. They talk about the harshness of race-issue accounting. This could have been solved by the plaintiff. They talk about how it's unfair to do this to them. Well, they had two opportunities. When the court first granted them 30 days to file the amended complaint and then when they went back to the court to ask for additional time. They had time to fix this problem. Or even before they took their involuntary dismissal, they could have filed a motion for leave to file the amended complaint in the trial court, which reasserted all of their positive action, and then filed a motion for involuntary dismissal after those were played. There are a number of ways the plaintiff, if they feel the way they should, could have avoided the effect of race-issue accounting. The plaintiff had very good lawyers initially. They have very good lawyers now. The answer that you can't punish me because it's a harsh punishment is not an excuse. All they had to do was read Smith. That's all anybody had to do in order to understand what was going to happen the minute they filed their verbal request for involuntary dismissal of their cause of action in 2012. The court was absolutely correct. The line that dictates the ruling in this case, the Richter case, is the upshot of the court's February 27th order was the granting of the Defendant's 2615 motion would be considered to be with prejudice only after the expiration of the 60-day period. And that's exactly what we're arguing here, that after that time limit expired. And we're not saying it wasn't there. That was decided in 2003. Everybody knew, standing in that courtroom, that that was the rule of law in the state of Illinois. But somehow they want to say, no, we're not going to obey Smith. We're going to do what we want to do, and then we're going to blame the Defendants. It's the Defendants' fault, but they didn't do something. And Smith clearly says it's not the Defendants' obligation to do it. If you want to avoid the harshness of race judicata, then don't ignore the court's orders. Also, there are three requirements for race judicata. It isn't like there's just one trip rule. There were three requirements, and they all met here. The court asked whether Plaintiff's Richter II suit is a copy of Richter I. And the answer is almost word for word. They literally took the very first complaint that was ever filed in this case and copied it word for word when they filed Richter II. Now, they say that the Defendant engaged in procedural maneuver. Yeah. When the case was originally filed in Madison County, I filed a motion to transfer venue and a motion to dismiss on the same day. The trial court decided to take up my motion to dismiss and then ruled that I waived my motion to transfer. I wasn't gaming the system. I was filing the pleadings that I'm allowed to file. I was filing for form nonconvenience because Prairie Farms Dairy's corporate headquarters and all the documents relating to this cause of action and the people at Prairie Farms who were involved are all located in Carlingville, Illinois. They're not located in Edwardsville, Illinois. And the second time around when Richter II was filed, instead of filing my motion to dismiss and my motion to transfer the same day, I filed my motion to transfer one day earlier. So it was the one the court had to address first. And that's how we ended up in Macoupin County where we belonged all along. I think it's telling that the plaintiff does not plead any new facts in their amended complaint except that all of a sudden, 13 years after the operative facts, we now have a case of mutual duty claim, which asserts essentially the same facts as the fraud claim, but it's a whole new cause of action. Counselor, your time has expired. Thank you. Case number 119518, Michael Richter et al. v. Prairie Farms Dairy, Incorporated, is taken under advisement as agenda number five. Mr. Shoemaker and Mr. Marks, thank you for your arguments this morning. You are excused at this time. Mr. Marshall, the Supreme Court stands adjourned.